UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

JACKSON DIVISION

| | |
|---|---|
| AMERIPRISE FINANCIAL SERVICES, INC., | * * * |
| Plaintiff, | * CIVIL ACTION NO.: * 3:07-cv-00404-TSL-JCS * |
| VERSUS | * * |
| ALFRED D. ETHEREDGE, | * * |
| Defendant. | * * |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Ameriprise Financial Services, Inc. ("Ameriprise") submits this memorandum in support of its motion seeking an order compelling Alfred D. Etheredge ("Etheredge") to arbitrate his claims against Ameriprise. Arbitration should be compelled in accordance with written agreements between the parties and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA").

**BACKGROUND AND FACTS**

This litigation started when Etheredge filed a complaint seeking damages against Ameriprise and James McKennon ("McKennon") in Mississippi state court (the "Lawsuit").[1] Etheredge claims that Ameriprise and McKennon made misrepresentations regarding certain securities purchased in his brokerage account at Ameriprise (the "Account"). Etheredge asserts claims for: (1) negligence; (2) breach of fiduciary duties;

---
[1] Shortly after the Lawsuit was initiated, Ameriprise filed a complaint with this Court (the "Ameriprise Action"), seeking to compel Etheredge's claims to arbitration. A copy of the state court complaint is attached as Exhibit A to Ameriprise's Complaint filed with this Court.

(3) breach of contract; and, (4) fraud. In all, Etheredge's seeks compensatory damages totaling five hundred thousand dollars ($500,000.00) and punitive damages of one hundred thousand dollars ($100,000.00).

All of Etheredge's claims arise from and relate exclusively to transactions that took place in his Account. At the time he opened his Account, Etheredge signed an Advantage IRA Application (the "Application") and an American Express Financial Advisors SPS Advantage Service Agreement (the "Agreement"). The Application and Agreement signed by Etheredge are attached and incorporated herein as Exhibits A and B, respectively. Complete copies of the Application and Agreement are attached and incorporated herein as Exhibits C and D, respectively.

In the Application, Etherege agreed that his account was "**governed by a predispute arbitration clause which is found in Section 13 of the** [Agreement]," and that he received a copy of the Agreement containing the arbitration clause. *See* Exs. A, p. 11 & C, p. 11 (emphasis in original).

In addition to the Application, Etheredge agreed to and signed the Agreement. *See* B, p. 18 & D at p. 18 ("**This Agreement contains a pre-dispute arbitration clause in Paragraph 13 . . .**") (emphasis in original). Paragraph 13 of the Agreement states:

> Any controversy arising out of, or relating to [Etheredge's] account, to transactions with [Ameriprise] or [Ameriprise's] agents and/or employees, or to this Agreement or the breach thereof, shall be settled by arbitration and conducted pursuant to the Federal Arbitration Act before the National Association of Securities Dealers Inc., the Midwest Stock Exchange, the New York Stock Exchange, the American Stock Exchange, or the Municipal Securities Rulemaking Board as [Etheredge] may elect.

Ex. D at p. 16, ¶ 13 (emphasis omitted).

Etheredge also acknowledged that:

> [He] understands and agrees that: i) Arbitration is final and binding on the parties; ii) The parties waive their right to seek remedies in court, including the right to a jury trial . . .

*Id.* at p. 16 (emphasis omitted).

Importantly, the claims and causes of action asserted by Etheredge in the Lawsuit arise out of his Account, and are thus covered by the arbitration provisions set forth in the Agreement.

## **LAW AND ARGUMENT**

**I.  Etheredge's Claims Must Be Arbitrated.**

The FAA applies to all transactions "involving commerce." 9 U.S.C. § 2; *Del E. Webb Constr. v. Richardson*, 823 F.2d 145, 147 (5th Cir. 1987); *Medical Development Corp. v. Industrial Molting Corp.*, 479 F.2d 345, 347 (10th Cir. 1973); *Robins & Myers, Inc. v. Winger Asso., Inc.*, 874 F. Supp. 252, 254 (D. Minn. 1993). In that regard, the FAA preempts state law and governs the interpretation of arbitration clauses contained in contracts affecting commerce. *See Volt Infor. Scis., Inc. v. Board of Trustees*, 489 U.S. 468, 475 (1989). It is beyond peradventure that the purchase and sale of securities relates to interstate commerce. *See Austin Municipal Securities, Inc. v. NASD*, 757 F.2d 676, 679 (5th Cir. 1985) (stating that an arbitration clause in brokerage accounts "evinces a transaction involving commerce"); *see also Prudential Securities, Inc. v. Hornsby*, F. Supp. 447, 449 (N.D. Ill. 1994).

The FAA mandates the enforcement of arbitration agreements by expressly providing that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Accordingly, and in furtherance of the purpose and intent of the FAA, courts

have consistently and liberally interpreted arbitration agreements. *See Randolph v. Greentree Financial Corp.*, No. 98-6055, 2001 WL 245727 at *5 (11th Cir. March 1, 2001) ("according to the Supreme Court, the last time this case was before us, we made the mistake of giving way too little weight to the FAA's pro-arbitration policy. We decline to make the same mistake again"). So strong is the federal policy in favor of arbitration that the United States Supreme Court has directed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).

In addressing a motion to compel arbitration under the FAA, the Fifth Circuit has instructed district courts to conduct a two-step inquiry. *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). First, the court determines whether the parties agreed to arbitrate the dispute in question. *See id.* at 257. Once it is determined that the parties agreed to arbitrate, then the court must consider whether any federal statute or policy renders the claim unarbitrable. *See id.*, *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

This Court should compel Etheredge to arbitrate his claims because: (1) a valid written agreement to arbitrate exists; (2) the dispute between Etheredge and Ameriprise falls within the scope of the arbitration agreement; and, (3) there are no external constraints that foreclose enforcement of the parties' arbitration agreement.

**A.      A Valid Written Agreement to Arbitrate Exists.**

The arbitration provision set forth in Etheredge's Agreement plainly covers any controversy arising out of, or relating to: (1) his securities account; (2) any transaction involving Ameriprise; or, (3) the construction, performance, or breach of the Agreement. *See* Ex. D at p. 16, ¶ 13.

The Fifth Circuit has compelled arbitration of claims arising under a brokerage account containing an arbitration provision similar to the one in Etheredge's Agreement. *See R. M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 532 (5th Cir. 1992). In *Welch*, the Court compelled arbitration of plaintiff's claims of unauthorized trading after concluding that the claims fell within the scope of arbitration clauses in two of the parties' agreements: (1) an arbitration clause in a customer agreement stating that "[a]ny controversy between us, arising out of or relating to this contract or the breach thereof shall be settled by arbitration;" and, (2) an arbitration clause in an option agreement stating that "[a]ny controversy arising out of the handling of any of the transaction referred to in this agreement shall be settled by arbitration." *Id.* at 539.

Further, arbitration clauses that apply to any claim or controversy, such as the one agreed to by Etheredge, are deemed very broad and cover all possible claims that might arise. *See Municipal Energy Agency of Miss. v. Big Rivers Electric Corp.*, 804 F.2d 338, 342 (5th Cir. 1986); *In re Sedco, Inc.*, 767 F.2d 1140, 1145 (5th Cir. 1985) ("[I]t is difficult to imagine broader language than . . . any dispute") (internal quotations omitted). Moreover, any doubt concerning the scope of an arbitration clause must be resolved in favor of arbitration. *See Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000); *City of Meridian v. Alegernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir. 1983).

5

In this case, Etheredge expressly agreed to arbitrate "[a]ny controversy arising out of, or relating to" his account with Ameriprise, his transactions with Ameriprise, or the construction, performance, or breach of the Agreement. *See* Ex. D at p. 16, ¶ 13. The allegations in the Lawsuit involve the handling of Etheredge's Account and transactions that took place in the Account. Moreover, Etheredge's alleged damages are predicated on his claim that Ameriprise mismanaged his Account and/or negligently allowed McKennon to mismanage his Account. Thus, Etheredge's entire case against Ameriprise is based on his Account and on transactions with Ameriprise, and clearly falls within the Agreement's broad arbitration provision.

> B. **There Is No Federal Statute Or Policy Rendering Etheredge's Claims Non-arbitrable.**

After finding a valid agreement to arbitrate and determining that the parties' dispute falls within the scope of that agreement, the court must determine "whether any federal statute or policy renders the claims non-arbitrable." *R. M. Perez*, 960 F.2d at 538. In that regard, the Supreme Court has concluded that Congress intended that predispute agreements to arbitrate claims under the federal securities laws be enforceable. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238 (1987); *Rodriguez de Quikas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484-85 (1989). Here, there is no Congressional impediment to the enforcement of arbitration agreements covering common law claims arising under a securities brokerage account. *Se Klein v. Boyd*, 949 F. Supp. 286, 289-90 (E.D. Pa. 1996). Accordingly, because there is no federal policy foreclosing the arbitration of Etheredge's claims against Ameriprise, Etheredge's claims should be arbitrated.

## CONCLUSION

Arbitration is the exclusive remedy agreed upon by the parties. All of Etheredge's claims fall within the scope of the arbitration provision set forth in the Agreement. Accordingly, Ameriprise requests that an order be entered compelling Etheredge to proceed to arbitration of his claims against Ameriprise in accordance with the FAA and the Agreement.

Respectfully submitted,

**WELLS, MOORE, SIMMONS**
    **& HUBBARD, PLLC**


/s/ Larry E. Mobley
Richard Motague (MS Bar No.: 3411)
Highland Bluff North
4450 Old Canton Road, Suite 200
Jackson, Mississippi 39211
Telephone: (601) 354-5400
Facsimile: (601) 355-5850

-and-

**BARRASSO USDIN KUPPERMAN**
    **FREEMAN & SARVER, L.L.C.**
Thomas A. Roberts, *pro hac vice*
Larry E. Mobley, *pro hac vice*
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

***Attorneys for Ameriprise Financial Services, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

/s/ Larry E. Mobley